IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 7:06-CV-32-BO

| | |
|---|---|
| RANDOLPH O'DELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | O R D E R |

This case is before the Court on the parties' Cross-Motions for Judgment on the Pleadings. For the following reasons, Plaintiff's Motion is GRANTED and Defendants' Motion is DENIED. The decision below is REVERSED, with benefits awarded to Plaintiff.

## BACKGROUND

Plaintiff applied for disability benefits and supplemental security income on October 21 and September 30, 2002, alleging that he had been become disabled as of October 30, 1996. His claim was denied initially and on reconsideration. After hearing the Plaintiff's case, an Administrative Law Judge ("ALJ") denied benefits. The Appeals Council vacated that decision, and remanded the case for further consideration. The ALJ then heard the case once more, and again denied Plaintiff's claim. This time, the Appeals Council declined to review the case, making the ALJ's second decision final. Plaintiff then sought review of the ALJ's final decision, and both parties filed Motions for Judgment on the Pleadings. A hearing on the Motions was held in Edenton, North Carolina on January 10, 2007.

## DISCUSSION

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act is limited to determining whether the findings of the ALJ are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). Substantial evidence consists of more than a mere scintilla of evidence, but may be less than a preponderance of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must not substitute its judgment for that of the Commissioner if the Commissioner's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456.

In evaluating whether a claimant is disabled, an ALJ uses a multi-step process. First, a claimant must not be able to work in a substantial gainful activity. 20 C.F.R. § 404.1520. Second, a claimant must have a severe impairment, which significantly limits his or her physical or mental ability to do basic work activities. *Id.* Third, to be found disabled, without considering a claimant's age, education, and work experience, a claimant's impairment must be of sufficient duration and must either meet or equal an impairment listed by the regulations. *Id.* Fourth, in the alternative, a claimant may be disabled if his or her impairment prevents the claimant from doing past relevant work. *Id.* Fifth, if a claimant cannot do past relevant work, he or she is disabled if an impairment prevents the claimant from doing other work. *Id.*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his onset date. At step two the ALJ found that Plaintiff suffered from severe rheumatoid arthritis and disk disease, and that these impairments did not meet or equal a listing. The ALJ then determined that Plaintiff possessed the residual functional capacity ("RFC") for sedentary

2

work. Specifically, the ALJ found that Plaintiff could lift up to ten pounds at a time, while lifting small articles occasionally, and sit for six hours in an eight hour workday, while walking or standing for the remaining two hours. Additionally, the ALJ concluded that Plaintiff: could not climb, crawl, or balance; could engage in no more than frequent fine manipulation; could occasionally reach overhead; and would require the option to sit or stand at will. Given this RFC, the ALJ concluded at step four that Plaintiff could not return to his past relevant work. The ALJ then asked a neutral Vocational Expert ("VE") whether work in the national economy remained available for a person of Plaintiff's age, work background, experience, and RFC. The VE identified several available jobs, so the ALJ denied benefits.

Plaintiff challenges the ALJ's decision in two respects. His primary argument is that the the ALJ's RFC finding was contradicted by two opinions from his treating rheumatologist, Dr. Ho ("Ho"). Second, Plaintiff says Ho's conclusions corroborate his allegations about the extent of his impairments, and thus undermine the ALJ's decision to discredit his testimony. In treatment notes dated October 24, 2002, Ho observed that Plaintiff was suffering from active rheumatoid arthritis, and noted that Plaintiff had described his pain as registering at ten on a scale of one to ten. Tr. 256-59. According to the notes, Ho had also signed a letter stating that Plaintiff's arthritis had rendered him totally incapable of working. *Id.* at 258.[1] Similarly, in April of 2005, Ho completed a Social Security Administration questionnaire regarding Plaintiff's functional capacity. *Id.* at 271-73. Ho's entries indicated that Plaintiff's arthritis affected all his

---

[1] At the hearing on the Motions for Judgment on the Pleadings, Plaintiff's counsel rested on Ho's October 24, 2002 treatment notes as the earliest evidence of Plaintiff's total disability, and acknowledged that this effectively shifted Plaintiff's claimed onset date from October 30, 1996 to October 24, 2002.

3

major joints, including his wrists, hands, ankles and feet; that there were signs of inflammation or deformity in Plaintiff's joints; that Plaintiff was not exaggerating his symptoms; and that Plaintiff's condition caused physical limitations. *Id.* at 273.

The questionnaire also contained approximately fifteen detailed inquires about Plaintiff's ability to perform certain tasks, such as lifting and fingering. *Id.* at 271-72. Ho answered only one of these, by indicating that Plaintiff had to periodically alternate sitting and standing to relieve his discomfort. *Id.* at 272. Other than that, the doctor did not specify the kinds of physical activities Plaintiff could engage in, or how long he could engage in them. Instead, Ho's handwritten notes made clear that Plaintiff's account of his physical ability would be the best source of information in that respect. *See id.* at 271-72 ("[p]lease have patient answer these questions. I'll be happy to validate them after he provides the answers;" "unable to answer because these are not quantitative [sic]"; "same as above. Not sufficient information unless you have pt. answer these questions."). Plaintiff says that, as the opinions of his treating physician, Ho's 2002 and 2005 diagnoses should have counted for more in the ALJ's functional capacity and credibility determinations.

The ALJ discredited Ho's 2002 "unable to work" letter, noting that the ultimate disability determination was reserved to the Commissioner. *Id.* at 23 (citing 20 C.F.R. §§ 404.1527, 416.927). While the disability question is a legal one, a treating physician's opinion of a claimant's work capacity can, and must be, considered as substantive evidence on that issue. 20 C.F.R. § 404.1527 (e)(1) ("[w]e are responsible for making the determination or decision about whether you meet the statutory standard of disability. In so doing, we review *all of the medical findings and other evidence* that support a medical source's statement that you are disabled[.]");

4

*see also* SSR 96-5p ("[a]judicators must always carefully consider medical source opinions about any issue, including opinion about issues that are reserved to the Commissioner"). And in any case, his decision to write a letter attesting to Plaintiff's disability does not affect the probative value of Ho's treatment notes, which indicate that Plaintiff's arthritis diminished Plaintiff's physical capacity -- particularly the use of his hands, shoulders and feet. Tr. at 257-58.[2]

The ALJ likewise noted that after Ho's 2002 diagnosis, Plaintiff showed some improvement. A modest and temporary diminution in symptoms of course does not contradict Ho's initial findings, especially considering his 2005 assessment of Plaintiff's functional capacity. *See Mason v. Barnhart*, 325 F.Supp. 2d 885, 901 (E.D. Wis., 2004) (reversing where proof of modest improvement was offset by equal evidence that claimant's condition had remained the same or worsened).

Moreover, it appears that the ALJ read the 2005 assessment too narrowly. The ALJ construed Ho's 2005 responses as establishing *only* that Plaintiff required a sit/stand option, and that he possessed no additional physical limitations. This interpretation is foreclosed by Ho's

---

[2] Among other things, Ho's 2002 notes recorded:

> He has active synovitis of the PIP and MCP joints with inability to make a full fist. His wrists are swollen, right greater than left. His elbows have flexion contractures and small effusion. Shoulders are painful on range of motion. Hips move well. Knees are uncomfortable with full extension. He has a small effusion on the left side, none of the right. He also has a scar from previous surgery on the left knee. Both ankles have active synovitis and the toes are diffusely swollen with squeeze tenderness across the MTP joints.
>
> IMPRESSION
> Active rheumatoid arthritis.[]

Tr. 257-58.

5

handwritten remarks, which communicate Ho's strong belief that Plaintiff would describe his limitations accurately, as well as Ho's unqualified willingness to endorse Plaintiff's account of his symptoms. Tr. at 271-72. Ho's answers further show that Plaintiff was limited in the use of all his major joints, including those at his extremities. *Id.* In other words, in 2005, Ho indicated that Plaintiff's limitations extended beyond the mere need to sit or stand at will, and pointed to Plaintiff as the best indicator of precisely what those limitations would be. If accorded great weight, Ho's opinion fully corroborates Plaintiff's account of his functional capacity. 20 C.F.R. § 404.1527. The ALJ therefore erred by reading the 2005 questionnaire as evidence that Ho's medical opinion of Plaintiff had improved, such that he would require no more than a sit/stand option in order to work at the sedentary level.

Plaintiff's testimony indicated that, given his impairments, his work capacity was less than even the restricted sedentary RFC found by the ALJ. Specifically, Plaintiff testified about his difficulty in using his hands, his need to sit or stand at his option, and his persistent fatigue. Tr. 310-16. The ALJ discredited this testimony, given Plaintiff's modest physical activities and his failure to seek medical treatment for four significant time periods from 1997 to 2005.

Considerable evidence undercuts the ALJ's credibility finding. First, the ALJ noted that Plaintiff helps elderly friends with yard work and takes part in some household chores – modest tasks that neither directly contradict his testimony nor preclude a finding of disability. *Thompson v. Sullivan,* 987 F.2d 1482 (10th Cir. 1993) (rejecting ALJ's credibility finding when claimant visited neighbors and performed light housework). And as for the gaps in Plaintiff's treatment – from April 1997 to January of 1998, from January of 1998 to February of 2000, from April of 2000 to July of 2002, and from June of 2004 to February of 2005 – the first three came before

6

Ho's 2002 opinion, and all four predated Ho's October 2005 questionnaire. In any case, there was little reason to discount Plaintiff's justification for his treatment lapses. As the ALJ saw it, Plaintiff had explained that he had not sought medical attention more regularly because he had problems finding adequate transportation. Tr. at 23. The ALJ rejected that explanation, given that Plaintiff lived with a roommate and received support from his family. *Id.* The fact that he lives with another woman, or that his family members generally "support" him, does not establish Plaintiff's unfettered ability to travel. In any case, the ALJ appears to have understated Plaintiff's testimony. Plaintiff testified that his sporadic treatment record resulted both from shortfalls in his finances as well as his reliance on public buses to travel from his home in Warsaw to Ho's Greenville office – a distance of about seventy miles. Tr. at 308 ("[s]ocial services sent me a letter saying they were going to cut my medicaid, which they did do. And I use public transportation to get to Greenville, so I couldn't get there"). Other evidence in the record, such as Ho's treatment notes, likewise suggest that Plaintiff's finances prevented him from seeking more aggressive therapies. *Id.* at 258 ("[h]e realizes that he will need to have some help financially because the medications are expensive."). Most critically, Ho's view, in 2002 and in 2005, was that Plaintiff's arthritis seriously compromised his physical capabilities. That objective evidence wholly supported Plaintiff's subjective allegations, and undermines the ALJ's decision to credit Plaintiff only partially.

The VE testified that, assuming the Plaintiff's testimony were believed, then no jobs would be available to him in the national economy. *Id.* at 321. Plaintiff's testimony is supported by Ho's October 24, 2002 and April 1, 2005 opinions. In combination, his subjective testimony and the supporting medical evidence require both reversal of the decision below, and the award

7

of benefits, from October 24, 2002 onward.

## CONCLUSION

Plaintiff's Motion is GRANTED and Defendant's Motion is DENIED. The decision below is REVERSED, with benefits awarded to Plaintiff as of October 24, 2002.

SO ORDERED.

This 28 day of August, 2007.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8